[168 N.C. App. 638 (2005)]

IN THE MATTER OF: M.J.G., A MINOR CHILD

No. COA04-369

(Filed 1 March 2005)

## 1. Child Abuse and Neglect— neglect—findings of fact—failure to visit child one week prior to filing of petition

The trial court erred in a child neglect case by its finding of fact 5 that states neither the mother nor the putative father visited the minor child for approximately one week prior to the date of the filing of the petition in this case on June 24, 2003, because: (1) the record does not reveal any testimony indicating the mother failed to visit the minor child in the hospital during the week prior to the petition; (2) the two social workers did not provide any testimony regarding the mother's visitation of the minor in the hospital; (3) the paternal grandfather testified the mother lived with him for two weeks after the child's birth and that he would take the mother to visit the child every night until she moved out of his home; and (4) DSS did not offer any testimony regarding the mother's hospital visitation or lack thereof during the last week the child was in the hospital.

## 2. Child Abuse and Neglect— neglect—findings of fact—whereabouts of parents unknown

The trial court did not err in a child neglect case by the portion of finding of fact 5 which states the whereabouts of the mother were not known at the time of the release of the minor child from the hospital and the portion of finding of fact 10 which states the mother left the paternal grandfather's residence and at the time of the filing of her petition her whereabouts were unknown and she had no housing or income known to DSS, because: (1) the paternal grandfather testified that the mother had moved from his home, that he did not know her whereabouts, and that he informed DSS that the mother had left his residence; (2) no evidence was offered tending to indicate DSS knew of the mother's whereabouts after she left the grandfather's home; (3) a social worker testified the mother did not have any employment at the time the petition was filed; and (4) no evidence was entered regarding the mother's housing situation, and all of the evidence indicated that DSS did not know where the mother was.

**3. Child Abuse and Neglect— neglect—findings of fact—mother admitted smoking marijuana before child birth**

The trial court did not err in a child neglect case by the portion of finding of fact 7 which states the mother acknowledged smoking marijuana the day before the birth of the minor child, because even though the mother did not specifically admit to using marijuana the day prior to the child's birth, the testimony that she refused to take a drug test the day before the child's birth and the fact that she tested positive for marijuana the day of the child's birth is sufficient evidence from which the trial court could infer the mother had recently used marijuana.

**4. Child Abuse and Neglect— neglect—findings of fact—cease reunification order entered for infant's older sister**

The trial court did not err in a child neglect case by finding that a cease reunification order had been entered for the infant's older sister, because a social worker testified the older daughter had been adjudicated abused and neglected and that a cease reunification order had been entered.

**5. Child Abuse and Neglect— neglect—findings of fact—mother diagnosed with narcissistic personality disorder**

The trial court did not err in a child neglect case by its finding of fact 9 stating that the mother previously had been diagnosed as having narcissistic personality disorder, because: (1) a social worker testified by reading the pertinent report that an 11 February 2003 psychological evaluation indicated the mother has narcissistic personality disorder; and (2) although the mother objected to this testimony, she neither stated a basis for this objection during the hearing nor does she make any arguments on appeal as to why this testimony was inadmissible.

**6. Child Abuse and Neglect— neglect—findings of fact—no supervision of minor child**

The trial court erred in a child neglect case by its finding of fact 12 stating that the minor child received no supervision from the mother for around one week next preceding the date of the filing of the petition in this case and that the minor child had been abandoned as of the date of the filing of the petition, because the evidence presented indicated the mother visited her daughter regularly in the hospital and DSS did not present any evidence to the contrary.

**7. Child Abuse and Neglect— neglect—findings of fact— mother unavailable to receive child—older sibling abused and neglected**

The trial court did not err in a child neglect case by its finding of fact stating that the minor child's mother was unavailable to receive her at discharge from the hospital and that the child's older sister had been subjected to abuse and neglect, because: (1) custody had been placed with DSS prior to the child's release from the hospital, meaning the mother would have been unavailable to receive her daughter at discharge; (2) DSS did not know of the mother's whereabouts at the time the petition was filed; and (3) although the older sister's adjudication order had not been offered into evidence, the social worker did testify that the older sister had been adjudged abused and neglected.

**8. Child Abuse and Neglect— neglect—findings of fact—clear, cogent, and convincing evidence**

Clear, cogent, and convincing evidence supports the conclusion that the minor child was neglected including that: (1) the mother tested positive for marijuana use on the day the child was born; (2) another child had been adjudged abused and neglected; (3) the mother was unemployed; and (4) the mother's whereabouts were unknown at the time the petition was filed.

**9. Child Abuse and Neglect— disposition hearing—admission of reports—rules of evidence do not apply**

The trial court did not err in a child neglect case by considering the DSS and guardian ad litem reports in making its disposition even though the reports had not been admitted into evidence, because: (1) N.C.G.S. § 7B-901 provides that the disposition hearing is an informal proceeding in which the formal rules of evidence do not apply; (2) the disposition hearing was continued to a later date after the trial court was informed that all parties had not received a copy of the reports; and (3) all parties had an opportunity to review the reports before the trial court considered the reports in making its disposition.

**10. Child Abuse and Neglect— neglect—reasonable efforts made by DSS—cessation of reunification efforts**

The trial court did not err in a child neglect case by determining that reasonable reunification efforts had been made by DSS and by ordering DSS to cease reunification efforts, because:

IN RE M.J.G.

[168 N.C. App. 638 (2005)]

(1) although at the time of the disposition hearing the mother was employed, the findings of fact also indicated the mother did not have stable housing, she had tested positive for marijuana and benzodiazopines on one occasion after the adjudication hearing, and she had not attended several of her substance abuse assessments since the adjudication hearing; and (2) the record included findings that the mother was not making progress on her psychological problems and that an order to cease reunification efforts had been entered regarding her other daughter.

**11. Child Abuse and Neglect— neglect—failure to use exact statutory language for cessation of reunification efforts**

The trial court did not err in a child neglect case by failing to include in the disposition order the exact statutory language under N.C.G.S. § 7B-507(b) necessary to order a cessation of reunification efforts, because: (1) the statutory requirements were satisfied in conclusion of law 5 of the disposition order when the trial court stated that return to the home of either of the parents is contrary to the best interest of the child at this time and is contrary to the health, safety, and welfare of the child; (2) all of the statutory language is included in either the findings of fact or conclusions of law; and (3) the mother failed to cite any case law or other relevant authority indicating it was error not to use the exact statutory language.

**12. Child Abuse and Neglect— neglect—custody with mother not in best interest of child**

The trial court did not err in a child neglect case by determining that custody of the child with the mother is contrary to the child's best interest and to her safety and health even though the mother contends that custody should have been placed with her based on N.C.G.S. § 7B-900 stating that the initial approach should involve working with the juvenile and the juvenile's family in their own home so that the appropriate community resources may be involved, because: (1) N.C.G.S. § 7B-900 provides that the initial approach should involve working with the juvenile and the juvenile's family in their home if possible; and (2) the disposition order concluded that DSS had exercised reasonable efforts toward reunification, but that reunification was not in the best interest of the minor child at this time.

**IN RE M.J.G.**

[168 N.C. App. 638 (2005)]

Appeal by respondent from orders entered 19 September 2003 and 3 December 2003 by Judge C. Thomas Edwards in Catawba County District Court. Heard in the Court of Appeals 3 November 2004.

*J. David Abernethy for petitioner-appellee Catawba County Department of Social Services.*

*Carolyn Crouch for Guardian ad Litem.*

*Hall & Hall Attorneys at Law, P.C., by Susan P. Hall, for respondent-appellant.*

HUNTER, Judge.

The respondent mother appeals from the adjudication and disposition orders which concluded her infant daughter, MJG, was neglected and ordered the cessation of reunification efforts. The mother contends several findings of fact in both orders were unsupported by clear, cogent, and convincing evidence. The mother also challenges the trial court's determinations that (1) custody of MJG in her home was contrary to the child's best interest and to the safety and health of the child, (2) reasonable efforts were undertaken by the Department of Social Services ("DSS"), and (3) DSS shall cease its reunification efforts. After careful review, we affirm the orders below.

The record tends to show that MJG was born on 4 June 2003 and weighed two pounds and five ounces (2 lbs. 5 ozs.) at birth. Immediately after birth, the infant was admitted to the intensive care unit at Carolinas Medical Center in Charlotte, North Carolina. The mother was living with the infant's paternal grandfather at the time of MJG's birth, and he took the mother to the hospital each night to visit MJG. Prior to MJG's release from the hospital, the mother left the grandfather's residence and the grandfather did not know her whereabouts. Upon release from the hospital, MJG was placed in the custody of DSS. The child was never in the mother's custody.

The mother's other daughter had been adjudicated abused and neglected prior to MJG's birth and was in the custody of DSS. The mother had been ordered to have drug screenings as part of her case plan, and she had several positive drug tests prior to her pregnancy with MJG. During the pregnancy she had several negative drug tests. However, the mother tested positive for marijuana on the day MJG was born and the mother admitted using marijuana on 6 May 2003. She also refused to take a drug test the day before MJG was born.

IN RE M.J.G.

[168 N.C. App. 638 (2005)]

On 24 June 2003, Catawba County DSS filed a juvenile petition alleging MJG was neglected, in that MJG did not receive proper care, supervision, or discipline from her parent. After a 26 August 2003 hearing, MJG was adjudged neglected. After disposition was deferred, a disposition hearing was conducted on 18 November 2003 and the disposition order was signed on 3 December 2003. In the disposition order, the trial court ordered DSS to cease its efforts to return the minor child to her own home. The mother appeals.

The mother challenges several findings of fact in the adjudication and disposition orders. Allegations of abuse and neglect must be proven by clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2003). "In a non-jury [abuse and] neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). Our review of a trial court's conclusions of law is limited to whether the conclusions are supported by the findings of fact. *See In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984). "If the trial court's conclusions of law are supported by findings of fact based on clear, cogent and convincing evidence, and the conclusions of law support the order or judgment of the trial court, then the decision from which appeal was taken should be affirmed." *In re Everette*, 133 N.C. App. 84, 85, 514 S.E.2d 523, 525 (1999).

[1] First, the mother challenges a portion of finding of fact 5 in the adjudication order which states, "[n]either the mother nor the putative father visited the minor child for approximately one week prior to the date of the filing of the petition in this case on June 24, 2003[.]"

Our review of the record does not reveal any testimony indicating the mother failed to visit MJG in the hospital during the week prior to the filing of the petition. The two social workers did not provide any testimony regarding the mother's visitation of MJG in the hospital. The paternal grandfather testified the mother lived with him for two weeks after MJG's birth and that he would take the mother to visit MJG every night until she moved out of his home. DSS did not offer any testimony regarding the mother's hospital visitation or lack thereof during the last week MJG was in the hospital. Accordingly, this finding of fact is not supported by clear, cogent, and convincing evidence.

[2] The mother also challenges the portion of finding of fact 5 in the adjudication order which states, "the whereabouts of the mother and

**IN RE M.J.G.**

[168 N.C. App. 638 (2005)]

the whereabouts of the putative father were not known at the time of the release of [MJG] from Carolinas Medical Center." A social worker attempted to provide testimony regarding this finding of fact. However, the trial court sustained an objection to the testimony and ordered the testimony stricken from the record. The grandfather testified that the mother had moved from his home, that he did not know of her whereabouts, and that he informed DSS that the mother had left his residence. No evidence was offered tending to indicate DSS knew of the mother's whereabouts after she left the grandfather's home. Accordingly, clear, cogent, and convincing evidence supports the testimony that her whereabouts were unknown at the time the petition was filed because neither DSS nor the grandfather knew her location.

Similarly, the mother challenges a portion of finding of fact 10 which states, "[s]he left that residence and at the time of the filing of the petition, her whereabouts were unknown and she had no housing or income known to the Department of Social Services." As previously stated, DSS did not know of the mother's whereabouts at the time the petition was filed. A social worker also testified the mother did not have any employment at the time the petition was filed. No evidence was entered regarding her housing situation at the time the petition was filed. Rather, all of the evidence indicates DSS did not know where the mother was. Accordingly, we conclude the findings that her whereabouts were unknown and that she did not have any income at the time the petition was filed is supported by clear, cogent, and convincing evidence. Also, the finding that she did not have any housing known to DSS at the time the petition was filed is supported by clear, cogent, and convincing evidence.

[3] The mother next challenges the portion of finding of fact 7 in the adjudication order which states "[t]he mother acknowledged smoking marijuana the day before the birth of [MJG] . . . ." The social worker testified that the mother admitted smoking marijuana with MJG's father after a May 2003 court hearing. The social worker also testified the mother refused to take a drug test the day before MJG was born. In regards to whether the mother had used drugs the day prior to MJG's birth, the social worker specifically testified "[the mother] did not state whether she had used." However, the social worker also testified that the mother tested positive for marijuana the day MJG was born. Even though the mother did not specifically admit to using marijuana the day prior to MJG's birth, the testimony that she refused to take a drug test the day before the infant's birth and tested positive

**IN RE M.J.G.**

[168 N.C. App. 638 (2005)]

for marijuana the day of her birth is sufficient evidence from which the trial court could infer the mother had recently used marijuana. Accordingly, we conclude this finding of fact is supported by clear, cogent, and convincing evidence.

[4] The mother next argues the trial court erroneously found that a cease reunification order had been entered for the infant's older sister as there was no evidence entered supporting this statement. Our review of the transcript indicates a social worker testified the older daughter had been adjudicated abused and neglected and that a cease reunification order had been entered. Accordingly, this finding of fact is supported by competent evidence.

[5] The mother next challenges finding of fact 9 in the adjudication order which states "[t]he mother previously has been diagnosed as having Narcissistic Personality Disorder." A social worker testified, by reading the report, that an 11 February 2003 psychological evaluation indicated the mother has narcissistic personality disorder. Although the mother objected to this testimony, she neither stated a basis for the objection during the hearing nor does she make any arguments on appeal as to why this testimony was inadmissible. *See* N.C.R. App. P. 28(b)(6). Accordingly, this finding of fact is supported by clear, cogent, and convincing evidence.

[6] The mother next challenges finding of fact 12 in the adjudication order which states "[t]hat [MJG] received no supervision from [the mother or the father] for around one week next preceding the date of the filing of the petition in this case, and [MJG] had been abandoned as of the date of filing of the petition."[1]

The evidence indicates MJG was born on 4 June 2003 and was immediately placed in the intensive care unit of the Carolinas Medical Center. While MJG was in the hospital, the paternal grandfather testified the mother lived with him for approximately fourteen days, and that he took her to the hospital each night to visit MJG. A few days before the mother left his home, she attempted to jump out of a moving vehicle three times. Then, on the day she left his home, the grandfather testified the mother said: "Well, dad . . . . The hell with it. They can have [MJG and the older sister] both. I'm leaving."

---

1. We do not believe the trial court intended to use the term abandoned as it is used in child abuse, neglect, and dependency proceedings. We believe the trial court was indicating the mother had ceased visiting her daughter by using the word abandoned. Moreover, DSS did not allege the mother abandoned MJG in the petition.

**IN RE M.J.G.**

[168 N.C. App. 638 (2005)]

This evidence indicates that prior to the filing of the petition, the mother visited her infant daughter several times in the hospital. The juvenile petition was filed on 24 June 2003, and according to the petition, MJG was still in the hospital at the time the petition was filed. No evidence was presented by DSS regarding whether or not the mother visited her daughter in the hospital after she left the grandfather's home. Rather, the evidence only indicates the mother did not live with the grandfather during the last week MJG was in the hospital. The evidence presented indicates the mother visited her daughter regularly in the hospital, and DSS did not present any evidence to the contrary. Accordingly, clear, cogent, and convincing evidence does not support this finding of fact.

[7] Next, the mother challenges finding of fact 13 which states "[t]hat [MJG], had her mother been available to receive her at discharge from Carolinas Medical Center, would have lived in a home where another child, [the older sister], had been subjected to abuse and neglect." The mother contends the statements that she was unavailable to pick up her child and that another child had been subjected to abuse and neglect were unsupported by competent evidence.

In this case, a nonsecure custody order placing MJG in the custody of DSS was entered on 23 June 2003, the day before the petition was filed, and prior to MJG's release from the hospital. As the record indicates custody had been placed with DSS prior to MJG's release from the hospital, the mother would have been unavailable to receive her daughter at discharge. Furthermore, DSS did not know of the mother's whereabouts at the time the petition was filed. Therefore, this finding of fact was supported by clear, cogent, and convincing evidence.

The mother also challenges the portion of finding of fact 13 in the adjudication order which indicates another child had been abused and neglected. Although the older sister's adjudication order had not been offered into evidence, the social worker did testify that the older sister had been adjudged abused and neglected. Accordingly, finding of fact 13 is supported by clear, cogent, and convincing evidence.

[8] Even though we have concluded several findings of fact were unsupported by clear, cogent, and convincing evidence, the remaining findings of fact support the conclusion that MJG was neglected. A neglected juvenile is:

A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or care-

taker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (2003).

The findings of fact that the mother tested positive for marijuana use on the day MJG was born, that another child had been adjudged abused and neglected, that the mother was unemployed, and that her whereabouts were unknown at the time the petition was filed support the conclusion that MJG was neglected.

[9] The mother next challenges several findings of fact in the disposition order. In the disposition order, the trial court adopted and incorporated by reference court reports prepared by the social worker and guardian ad litem. Based upon these reports, the trial court rendered findings of fact indicating:

- the parents had a long history of domestic violence and substance abuse,

- the mother had lived in four different homes in the five months since MJG's birth,

- that the mother had to pay a fine for resisting an officer,

- that the mother was employed,

- .that the mother had been hospitalized for depression and threatened suicide,

- that describe details about the older daughter's abuse and neglect case,

- that the mother had signed a relinquishment for MJG's adoption but timely revoked it, and

- that the mother had failed to utilize the services offered her by DSS.

The mother argues that DSS failed to move the reports upon which these findings were based into evidence, and therefore, the

trial court erroneously relied upon the reports in making its findings of fact. We disagree.

N.C. Gen. Stat. § 7B-901 (2003) states:

> The dispositional hearing may be informal and the court may consider written reports or other evidence concerning the needs of the juvenile. The juvenile and the juvenile's parent, guardian, or custodian shall have an opportunity to present evidence, and they may advise the court concerning the disposition they believe to be in the best interests of the juvenile. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition. The court may exclude the public from the hearing unless the juvenile moves that the hearing be open, which motion shall be granted.

*Id.* In *In re Ivey*, 156 N.C. App. 398, 402, 576 S.E.2d 386, 389-90 (2003), this Court considered the argument that the trial court erroneously rendered findings of fact in a permanency planning hearing based upon reports that were not admitted into evidence. In holding that no error was committed by the trial court, this Court stated dispositional hearings are informal and that the trial court may consider all reports submitted. This Court also emphasized the parties had complied with the local rules requiring DSS and the guardian ad litem to submit reports to all parties at least two working days before the disposition or review hearing. Thus, no error was committed in considering the reports that had not been admitted into evidence and these reports provide sufficient evidence supporting the findings of fact in the disposition order.

Similarly, in this case, DSS and the guardian ad litem presented the reports to the trial court for consideration during the disposition hearing, which under the terms of N.C. Gen. Stat. § 7B-901 is an informal proceeding in which the formal rules of evidence do not apply. *See* N.C. Gen. Stat. § 7B-901; *In re Montgomery*, 77 N.C. App. 709, 715, 336 S.E.2d 136, 140 (1985) (indicating the formal rules of evidence do not apply in a dispositional hearing). Furthermore, the dispositional hearing was continued to a later date after the trial court was informed all parties had not received a copy of the reports. Therefore, all parties had an opportunity to review the reports before the trial court considered the reports in making its disposition. Based upon this Court's holding in *In re Ivey* and N.C. Gen. Stat. § 7B-901, we

**IN RE M.J.G.**

[168 N.C. App. 638 (2005)]

conclude the trial court did not erroneously consider the DSS and guardian ad litem reports in making its disposition.

**[10]** Next, the mother contends the trial court erroneously determined that reasonable efforts had been made by DSS and in ordering DSS to cease reunification efforts. Specifically, she argues that in the three months between the adjudication and disposition hearings, the mother had made progress. She also argues the order did not contain the necessary statutory language for cessation of reunification efforts.

Although at the time of the disposition hearing the mother was employed, the findings of fact also indicate the mother did not have stable housing, that she had tested positive for marijuana and benzodiazopines on one occasion after the adjudication hearing, and that she had not attended several of her substance abuse assessments since the adjudication hearing. The record also includes findings that the mother was not making progress on her psychological problems and that an order to cease reunification efforts had been entered regarding her other daughter. The older daughter had been adjudicated abused and neglected on 17 December 2002. Based upon these findings of fact, we conclude the trial court did not erroneously determine DSS had made reasonable efforts towards reunification of the mother and child.

**[11]** The mother also argues that the disposition order failed to include the exact statutory language necessary to order a cessation of reunification efforts. N.C. Gen. Stat. § 7B-507(b) (2003) states in pertinent part that:

> [T]he court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
>
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]

*Id.* In finding of fact 10 of the disposition order, the trial court stated:

> Although reunification efforts have been made, those valiant efforts have failed because the mother has failed to utilize the offered services. Reunification efforts with either parent clearly would be futile and inconsistent with the need of the minor child for a safe, permanent home within a reasonable period of time.

**IN RE M.J.G.**

[168 N.C. App. 638 (2005)]

In conclusion of law 5 of the disposition order, the trial court stated "[t]hat return to the home of either of the parents is contrary to the best interest of the child at this time, and is contrary to the health, safety and welfare of the child." We conclude that this finding of fact and conclusion of law satisfies the statutory requirements. Indeed, all of the statutory language is included in either the finding of fact or conclusion of law. Although the mother contends it was error for the trial court not to use the exact statutory language, she does not cite any case law or other relevant authority indicating it was error not to use the exact statutory language. Accordingly, we conclude the trial court did not erroneously fail to use the exact statutory language.

**[12]** Finally, the mother argues the trial court erroneously determined that custody of MJG with the mother is contrary to the child's best interest and to her safety and health. The mother argues that instead of custody being placed with DSS, custody should have been placed with her because N.C. Gen. Stat. § 7B-900 (2003) states "the initial approach should involve working with the juvenile and the juvenile's family in their own home so that the appropriate community resources may be involved[.]" However, N.C. Gen. Stat. § 7B-900 states in its entirety:

> The purpose of dispositions in juvenile actions is to design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction. *If possible,* the initial approach should involve working with the juvenile and the juvenile's family in their own home so that the appropriate community resources may be involved in the care, supervision, and treatment according to the needs of the juvenile. Thus, the court should arrange for appropriate community-level services to be provided to the juvenile and the juvenile's family in order to strengthen the home situation.

*Id.* (emphasis added). This statutory provision clearly states that the initial approach should involve working with the juvenile and the juvenile's family in their home *if possible.* In the disposition order, the trial court concluded in pertinent part:

2. That the DSS has exercised reasonable efforts toward reunification of the minor child with her parents, but reunification is not in the best interest of the minor child at this time[.]

3. That the DSS has exercised reasonable efforts to serve the needs of the minor child.

4. That the DSS has exercised reasonable efforts to prevent or eliminate the need for continued placement out of the parents' homes.

5. That return to the home of either of the parents is contrary to the best interest of the child at this time, and is contrary to the health, safety and welfare of the child.

6. That the best interest of the minor child will be served by the entry of the following order.

Based upon the trial court's conclusions of law and the findings of fact discussed previously, we conclude the trial court did not err in placing MJG in the custody of DSS.

In sum, even though we have determined several findings of fact were not supported by clear, cogent, and convincing evidence, several findings of fact, which are supported by clear, cogent, and convincing evidence, remain upon which the trial court could base a finding of neglect. We also conclude the trial court properly considered the DSS and guardian ad litem reports in making its disposition. Finally, notwithstanding the mother's limited progress, we affirm the disposition order.

Affirmed.

Judges CALABRIA and LEVINSON concur.