IN THE MATTER OF: M.I.W.
No. COA09-1088.
Court of Appeals of North Carolina.
Filed February 2, 2010.
This case not for publication
Harnett County Department of Social Services, by E. Marshall Woodall, and Duncan B. McCormick, for the petitioner-appellee.
Pamela Newell Williams for guardian ad litem.
Robin E. Strickland for respondent-appellant mother.
Susan J. Hall for respondent-appellant father.
MARTIN, Chief Judge.
Respondent-mother and respondent-father appeal from the trial court's 8 May 2009 order placing M.I.W. in the custody of the Harnett County Department of Social Services ("DSS") and ceasing reunification efforts. Respondent-mother contends that the trial court abused its discretion by ordering DSS to cease reunification efforts, and respondent-father argues that the trial court erred by failing to make a finding that it was not in M.I.W.'s best interests to return home and by placing M.I.W. in DSS custody rather than with a relative. We affirm the trial court's order.
Respondent-mother had three children prior to M.I.W., and DSS began offering services to respondent-mother in 2004, without success. DSS took custody of the three older children on 2 October 2006. A court report from DSS indicates that the older children were taken because of "mental health issues and/or impairment of [respondent-mother's] parental skills and abillities [sic] because of improper use of medication or other impairing substances." In July of 2008, the district court placed two of the children in a guardianship with their paternal grandmother, and terminated respondent-mother's parental rights to the third child on 12 December 2008.
M.I.W. was born in February of 2008. Respondent-father was incarcerated at the time of M.I.W.'s birth. On 9 September 2008, respondent-mother was impaired from using either prescription or other drugs. On that date, respondent-mother was involved in an incident during which M.I.W. hit his head. Both respondent-mother and M.I.W. required medical treatment as a result of the incident. Respondent-mother thereafter agreed, at the suggestion of DSS, to have M.I.W. placed with the paternal grandmother, where two of her other children had already been placed. M.I.W.'s paternal uncle also helped care for him.
On 19 March 2009, DSS removed M.I.W. from the care of the paternal grandmother and uncle. Social workers took M.I.W. to Wake Medical Center, and M.I.W. was diagnosed with healing fractures of the sixth and seventh ribs. M.I.W. was also dehydrated, had a burn and an infected wound on his ear, had multiple bruises, had an infection in his fingers, and appeared as if his fingernails had been pulled out. A physician at Wake Medical Center was concerned that the injuries M.I.W. had suffered were the result of abuse.
In an order entered 17 April 2009, the trial court adjudicated M.I.W. neglected and set the disposition hearing for 27 March 2009. At the disposition hearing, DSS recommended that reunification efforts with respondent-mother continue until 26 June 2009 in order for her to seek additional mental health and substance abuse treatment and obtain employment.
After the disposition hearing on 27 March 2009, the trial court entered a formal disposition order. In the order, the trial court awarded custody of M.I.W. to DSS, and provided supervised visits to respondents. The trial court released DSS from further efforts toward reunification with respondents, and scheduled a permanency planning hearing for 24 April 2009. Respondents each entered written notice of appeal.
Respondent-mother's sole argument on appeal is that the trial court erred in ceasing reunification efforts with respondent-mother. We disagree.
A trial court may direct that DSS is not required to continue reasonable efforts toward reunification, or to cease reunification efforts, if it finds, "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-507(b)(1) (2009).
"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M., 183 N.C. App. 207, 213, 644 S.E.2d. 588, 594 (2007). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Here, respondent-mother challenges only Finding of Fact 17, and we hold that the remainder of the trial court's findings sufficiently support its order ceasing reunification. The trial court found that DSS had been involved with respondent-mother for five or more years and had extended services to her for more than two years before her three other children were removed from her care in 2006. The court found that respondent-mother had been diagnosed with various psychological and emotional difficulties, including anxiety, ADHD, learning disability, bipolar disorder, and possibly post-traumatic stress disorder, and only attended therapy "off and on." The court considered a psychologist's report and found that the report stated respondent-mother admitted to using non-prescription drugs, including methamphetamines. The court found that a hospital report stated that respondent-mother had tested positive for PCP on 20 October 2008. The trial court's findings, unchallenged by respondent-mother, demonstrate a five-year pattern of failing to accept DSS assistance in treating her mental health or substance abuse problems. We hold that those findings adequately support the trial court's finding that continuation of services toward reunification with respondent-mother would be futile. We, therefore, overrule these assignments of error.
Turning to respondent-father's arguments, he first argues that the trial court failed to make a finding that returning M.I.W. to his home would be contrary to his best interests. We disagree.
An order placing a juvenile in DSS custody, "[s]hall contain a finding that the juvenile's continuation in or return to the juvenile's own home would be contrary to the juvenile's best interest." N.C. Gen. Stat. § 7B-507(a)(1) (2009). An order entered pursuant to N.C. Gen. Stat. § 7B-507 need not contain a formal recitation of the statutory language, as long as the trial court makes findings addressing the relevant criteria. See In re M.J.G., 168 N.C. App. 638, 649-50, 608 S.E.2d 813, 820 (2005).
In the disposition order in this case, the trial court, in Finding of Fact 19, stated, "It is in the best interest of the juvenile that his custody be awarded to DSS for placement and care as by law provided." The trial court recorded a practically identical conclusion of law. Additionally, in Finding of Fact 12, the court indicates that respondent-mother is not a suitable caretaker for M.I.W., and in Finding of Fact 13, the court indicates that respondent-father is also not a suitable caretaker. Although these findings and conclusions are not phrased in the exact language of the statute, when considered along with the balance of the trial court's findings and conclusions, they sufficiently demonstrate that the trial court carefully considered M.I.W.'s best interests when it awarded DSS custody rather than return M.I.W. to respondents' custody. Accordingly, we overrule these assignments of error.
Finally, respondent-father argues that the trial court failed to consider a relative placement before ordering M.I.W. be placed in DSS custody. This argument is also without merit.
The trial court "has broad discretion to fashion a disposition from the prescribed alternatives in N.C. Gen. Stat. § 7B-903(a), based upon the best interests of the child." In re B.W., 190 N.C. App. 328, 336, 665 S.E.2d 462, 467 (2008). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." In re Robinson, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (internal quotation marks omitted).
If the trial court elects to place the child outside the home, it must determine "whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home." N.C. Gen. Stat. § 7B-903(a)(2) (2009). Placement with a qualifying relative is required "unless the court finds that the placement is contrary to the best interests of the juvenile." Id.
We find no abuse of discretion occurred in this case. The trial court demonstrated it considered the paternal uncle and grandparents as a placement option for M.I.W. when it found:
2. Since the juvenile was removed from the custody of the mother on or about September 9, 2008, the juvenile has continued in the homes of the paternal grandparents and/or the paternal uncle R.R. until his removal by DSS, as custodian, and placed in the hospital on or about March 19, 2009, as a result of several unexplained injuries.
. . . .
13. Respondent father lives with a girl friend in Four Oaks, NC. He is currently unemployed. He has not entered into a Family Services Agreement with DSS; he has expressed to DSS his desire that his brother serve as guardian for the juvenile. The respondent father is not a resource for placement for the juvenile.
. . . .
16. Since September 9, 2008, the juvenile has remained out of the mother's home and in the placement of Mrs. R.N. and/or R.R. until March 19, 2009, when DSS placed the juvenile in Wake Medical Center in Raleigh, NC as a patient. The juvenile has been out of the mother's home for appropriately [sic] seven [7] months; the father has not been involved as the juvenile's parent since the juvenile was born.
These findings, which respondent-father has not challenged, indicate that the trial court was aware of respondent-father's request for relative placement, and that M.I.W. suffered physical harm and was removed from the care of the paternal grandparents and paternal uncle as a result of possible abuse. Accordingly, we hold the evidence supports the trial court's order placing M.I.W. in DSS custody rather than in a relative placement.
Affirmed.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).