DILLON, Judge.
Mother appeals from an order adjudicating her child P.M. ("Paige")[1] as a neglected and dependent juvenile and conditioning visitation with Paige on Mother first submitting three clean drug tests.[2] For the reasons set forth below, we affirm the trial court's order.
I. Background
In September 2015, Mother gave birth to Paige, her fourth child. Mother tested positive for cocaine at the time of birth. Paige's newborn medical records indicated an unconfirmed presumptive positive screen for cocaine. Due to the presumptive positive screen, a meconium screen was completed on Paige that was positive for cocaine metabolites. Paige was kept at the hospital for a week to monitor signs of withdrawal.
The hospital immediately referred the matter to Mecklenburg County Youth and Family Services ("YFS"). After receiving the report, YFS's social worker interviewed Mother at the hospital. Mother denied using cocaine but stated that she believed pain medication she was taking had given a false positive on her drug screen for cocaine. When the social worker inquired about potential relatives that would be willing to care for Paige, Mother could not provide any family names, nor could she identify Paige's father. Mother stated that she "was not living at a particular residence" and "was moving from house to house."
The next day, YFS filed a petition alleging that Paige was neglected and dependent. YFS obtained non-secure custody and placed Paige in foster care after her discharge from the hospital.
In April 2016, the trial court held a hearing and adjudicated Paige to be neglected and dependent. At the dispositional hearing held on the same day, the court ordered that visitation could begin only after Mother produced three clean drug screens. Mother timely appealed.
II. Analysis
Mother makes four arguments on appeal. She contends that the trial court (1) erred in admitting medical records into evidence despite her objection, (2) improperly limited the scope of her testimony in violation of her due process rights, (3) erred in adjudicating Paige as a neglected and dependent child, and (4) erred in denying her visitation. We address each argument in turn, and for the reasons below, we affirm the order of the trial court.
A. Medical Records
Mother first challenges the trial court's admission of certain medical records into evidence. However, when YFS moved to admit the medical records into evidence, Mother's counsel stated that he had "no objection." Only after the medical records had been admitted into evidence and YFS had rested its case did Mother's counsel object to the records "being used by the Court for [ ] medical testimony to support [ ] findings of the Court."
It is well settled that "an objection to the offer of evidence must be made in apt time, that is, as soon as the opponent has the opportunity to learn that the evidence is objectionable; and unless prompt objection is made, the opponent will be held to have waived it." State v. Hill , 294 N.C. 320, 330, 240 S.E.2d 794, 801 (1978). Mother's untimely objection failed to preserve the issue for appeal. In re A.E. , 171 N.C. App. 675, 679, 615 S.E.2d 53, 56 (2005).
Mother next contends that, even if the medical records were properly admitted, the trial court's finding that "[t]he juvenile and [M]other tested positive for cocaine at the time of birth" was not supported by the evidence, as the medical record introduced showed that Paige only tested positive for cocaine metabolites. However, we note that this finding is supported by other evidence. For instance, Paige's social worker testified that his involvement with the case began after Mother tested positive for cocaine when she gave birth to Paige, and that "the baby tested positive for cocaine as well." Mother has not challenged the social worker's testimony, and this testimony constituted clear, cogent, and convincing evidence supporting the trial court's finding that Mother and Paige tested positive for cocaine at birth. See In re M.J.G. , 168 N.C. App. 638, 644-45, 608 S.E.2d 813, 817 (2005) ("Even though the mother did not specifically admit to using marijuana the day prior to [her infant's] birth, the [social worker's] testimony that she refused to take a drug test the day before the infant's birth and tested positive for marijuana the day of her birth is sufficient evidence from which the trial court could infer the mother had recently used marijuana.").
B. Scope of Testimony
Second, Mother contends that the trial court violated her due process rights when it limited her testimony regarding the history surrounding her other children. We disagree.
During Mother's testimony, Mother's counsel questioned Mother about her other children. The trial court cut off the line of questioning, directing Mother's counsel to question Mother solely about the care of Paige:
[COUNSEL]: Let me ask you something about [B.S.]'s case in particular. You did not attend the [termination of parental rights] trial for [B.S.]'s case, did you?
[MOTHER]: I did not.
[COUNSEL]: Were you aware-
[MOTHER]: I wasn't aware-I didn't get no mail or nothing, because I guess it was sent [ ] the address was changed from different times.
[COUNSEL]: So when [the YFS social worker] asked you about [B.S.]-your rights to [B.S.] being terminated and you said you weren't aware of it. That's the truth?
[MOTHER]: Yes, that was the truth; and it's like when this happened, I was surprised and shocked, like I didn't know what was going on, what had happened, because it was a big-because the Judge had placed-at that point had placed everything-he said, well, you have a case open. It was open at the time, and he said because I had that case open, they felt they would be allowed to take my daughter as well is what was told to me.
[COUNSEL]: And as to the other two boys, one of them you had your rights terminated correct? Is that right?
[MOTHER]: With [N.K.S.], he was adopted.
[COUNSEL]: Well, now with [N.K.S.]-
THE COURT: Let's just talk about this child. I let this go a little bit, but let's just talk about this child.
In support of this argument, Mother cites to a case in which our Supreme Court held that "the trial court erred by not hearing all of the evidence which [the] mother was prepared to present to the court." In re Shue , 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984). However, the evidence which the parent in Shue sought to introduce consisted of evidence of the parent's changed circumstances and the current care arrangement of the child at issue. Id. at 597-98, 319 S.E.2d at 574. The Court also qualified its holding, noting that it was "[not ] intended to affect the trial court's authority to exclude incompetent, irrelevant and cumulative evidence." Id. at 597 n.4, 319 S.E.2d at 574 n.4 (emphasis added).
In the present case, the trial court accepted into evidence the order terminating parental rights to Mother's first child, and took judicial notice of an order adjudicating Mother's second child neglected and dependent and another order terminating parental rights to Mother's third child. Mother's testimony regarding her other children could have been considered cumulative or irrelevant. Thus, Mother has failed to show that the trial court erred in limiting her testimony to matters properly before the court.
C. Adjudication of Neglect and Dependency
Mother next contends that the trial court erred in adjudicating Paige neglected. We disagree.
"The role of this Court in reviewing a trial court's adjudication of neglect ... is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (internal quotation marks and citation omitted). Where clear and convincing evidence exists, "the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." Id. at 343, 648 S.E.2d at 523. Erroneous findings of fact unnecessary to the determination do not constitute reversible error when ample other findings support an adjudication of neglect. In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006). Conclusions of law are reviewable de novo . In re P.O. , 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010).
Mother argues that the following findings of fact which supported the trial court's finding of neglect were not supported by competent evidence: that Mother and Paige tested positive for cocaine at Paige's birth and that Paige "was showing signs of drug toxicity and withdrawal." However, as discussed in section II(A), Mother has failed to preserve this issue for appellate review.
In addition, Mother argues that the trial court's finding of fact that Mother has "a long history of having her children born positive for cocaine" was unsupported by clear and convincing evidence. The record shows that one of Mother's other three children tested positive for cocaine at birth. While the social worker possibly alluded to the fact that a second child had also tested positive for cocaine at birth, his testimony was not clear on this issue. Therefore, we agree with Mother that this finding was not supported by clear and convincing evidence, and we will disregard that finding in our analysis.
Mother next challenges the trial court's conclusion of law that Paige was a neglected juvenile. Specifically, Mother contends that there was no clear and convincing evidence introduced showing that Paige had suffered impairment or had a substantial risk of impairment or harm. We disagree.
A neglected juvenile is defined, in part, as one "who does not receive proper care, supervision, or discipline from the juvenile's parent ... or who lives in an environment injurious to the juvenile's welfare...." N.C. Gen. Stat. § 7B-101(15) (2015). "In order to adjudicate a child to be neglected, the failure to provide proper care, supervision, or discipline must result in some type of physical, mental, or emotional impairment or a substantial risk of such impairment." In re C.M. , 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007). A trial court's failure to make specific findings regarding a child's impairment or risk of harm will not require reversal where the evidence supports such findings. In re Padgett , 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).
Our review of the record reveals several factors that would support a finding that Paige had already suffered impairment or was at substantial risk of such impairment. The trial court found that Paige "was showing signs of drug toxicity and withdrawal." See In re M.J.G. , 168 N.C. App. at 647, 608 S.E.2d at 818 (upholding the trial court's adjudication of neglect based in part on the fact that the mother tested positive for marijuana on the day the juvenile was born). Moreover, Mother lacked stable housing. See In re C.G.R. , 216 N.C. App. 351, 362, 717 S.E.2d 50, 57 (2011) (upholding the trial court's finding that the juvenile was at a substantial risk of neglect based in part on the mother's "failure to provide and maintain stable housing"). Mother also had long-term untreated mental health issues. See In re B.S.O. , 234 N.C. App. 706, 721, 760 S.E.2d 59, 69 (2014) (affirming adjudication of neglect where the trial court found that the parent had failed to address her mental health issues). Finally, Mother's three other children had previously been adjudicated as neglected juveniles. See N.C. Gen. Stat. § 7B-101(15) ("In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile ... has been subjected to abuse or neglect by an adult who regularly lives in the home."). Therefore, sufficient evidence was presented to support the trial court's conclusion that Paige was a neglected juvenile.
Mother next contends that the trial court erred in adjudicating Paige to be dependent. We disagree.
N.C. Gen. Stat. § 7B-101(9) defines a dependent juvenile as:
A juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen. Stat. § 7B-101(9) (2015).
The trial court must make findings regarding both "(1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M. , 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." In re B.M. , 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007).
Here, the trial court found that "[Mother] had a residence, roof over her head, but it was unclear how long she will stay there." The court also found that "[Mother] has had 2 involuntary commitments since the petition was filed. [Mother's] mental health issues continue to repeat themselves and [Mother] repeatedly states she will not take any medication." Finally, the court found that "[s]ubstance abuse clearly remains an issue." All of these findings show that Mother was unable to provide proper care or supervision for Paige.
Regarding the second prong, the trial court found that "[Mother] would not provide any family names or supports, just first names which the [social worker] could not follow up on." Mother's failure to identify alternative placements supports the trial court's conclusion that Paige was a dependent juvenile. See In re L.H. , 210 N.C. App. 355, 364, 708 S.E.2d 191, 197 (2011) ("Our courts have ... consistently held that in order for a parent to have an appropriate alternative child care arrangement, the parent must have taken some action to identify viable alternatives."). We conclude that the trial court's conclusion of law that Paige was dependent was supported by the findings of fact.
D. Visitation
Finally, Mother contends that the trial court abused its discretion in denying her visitation without finding it was in Paige's best interests.
N.C. Gen. Stat. § 7B-905.1(a) states that:
An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety. The court may specify in the order conditions under which visitation may be suspended.
N.C. Gen. Stat. § 7B-905.1(a) (2015).
Contrary to Mother's argument, the trial court did not deny her visitation, but instead stipulated that "[p]rior to any visitation, [Mother] shall submit three clean drug tests. Visitation will be supervised for two hours per week, supervised by YFS." The trial court has discretion in determining how and under what conditions visitation will be carried out. See In re J.C. , 235 N.C. App. 69, 75, 760 S.E.2d 778, 782 (2014) ("[I]n the best interests of the juvenile, the trial court has the authority to set conditions for visitation [.]"), rev'd on other grounds , 368 N.C. 89, 772 S.E.2d 465 (2015). Mother has not demonstrated that the trial court abused its discretion in determining that it was in Paige's best interests that visitation begin only after Mother submitted three clean drug tests.
For the foregoing reasons, the trial court's order is affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR., and DIETZ concur.

A pseudonym.

The father is unknown and is not a party to this appeal.