702 S.E.2d 108 (2010)
In the Matter of T.R.M.
No. COA10-728.
Court of Appeals of North Carolina.
November 16, 2010.
*109 James N. Freeman, Jr., Elkin, for petitioner Alleghany County Department of Social Services.
Leslie C. Rawls, Charlotte, for appellant-mother.
Lucy Tatum Austin, Apex, for guardian ad litem.
STROUD, Judge.
Respondent-mother appeals from the trial court's permanency planning order and termination of parental rights order. For the following reasons, we affirm the permanency planning order and vacate the termination of parental rights order.

I. Background
On 12 February 2008, the Alleghany County Department of Social Services ("DSS") filed a juvenile petition alleging that Tom[1] was a neglected juvenile. On 13 February 2008, the trial court entered a nonsecure custody order giving DSS custody of Tom. On 20 May 2008, the trial court entered an order adjudicating Tom neglected, based on the consent of respondent-mother and the father. On 12 June 2009, the trial court entered a permanency planning order which ceased reunification efforts with respondent-mother and changed the permanent plan for Tom to adoption. On 17 July 2009, DSS filed a petition for termination of respondent-mother's parental rights. On 5 March 2010, the trial court entered an order terminating respondent-mother's parental rights. Respondent-mother appeals from the permanency planning order and the termination of parental rights order.

II. Termination of Parental Rights Order
Respondent-mother first contends that "[t]he trial court lacked subject matter jurisdiction over the termination proceedings because the unverified Petition did not comply with N.C. Gen.Stat. § 7B-1104[,]" which requires a petitioner to verify a petition to terminate parental rights. Because the petition was not verified, DSS and the guardian ad litem concede that the trial court lacked jurisdiction over the termination proceedings. Pursuant to N.C. Gen.Stat. § 7B-1104, "[t]he petition ... pursuant to G.S. 7B-1102 [to terminate parental rights], shall be verified by the petitioner[.]" N.C. Gen.Stat. § 7B-1104 (2009). "[A] violation of the verification requirement of N.C.G.S. § 7B-1104 has been held to be a jurisdictional defect per se." In re T.M.H., 186 N.C.App. 451, 454, 652 S.E.2d 1, 2, disc. review denied, 362 N.C. 87, 657 S.E.2d 31 (2007).
Here, DSS filed a petition to terminate respondent-mother's parental rights; however, the petition was not verified, as required by N.C. Gen.Stat. § 7B-1104. Therefore, the trial court never obtained jurisdiction over the termination action, and the trial court's termination of parental rights order is void; accordingly, we must vacate the trial court's order terminating parental rights. See In re C.M.H., 187 N.C.App. 807, 809, 653 S.E.2d 929, 930 (2007). As we are vacating the order terminating parental rights we need not address respondent-mother's remaining challenges regarding this order.

III. Permanency Planning Order
Respondent-mother also appeals from the trial court's permanency planning order because it ceased reunification efforts. Pursuant to N.C.Gen.Stat. § 7B-507(b), the trial court may cease reunification efforts with a parent under specified circumstances:
In any order placing a juvenile in the custody or placement responsibility of a county department of social services, ... the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]
N.C. Gen.Stat. § 7B-507(b)(1) (2009). A trial court may "order the cessation of reunification *110 efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts." In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003).
This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law. If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal. The trial court's conclusions of law are reviewable de novo on appeal.
In re P.O., ___ N.C.App. ___, ___, 698 S.E.2d 525, 530 (2010) (citation and quotation marks omitted).
Here, the trial court made numerous findings of fact before relieving DSS of further reunification efforts and changing the permanent plan to adoption. The following findings support the trial court's determination that a return to respondent-mother's home was contrary to Tom's health, safety, and need for a permanent home:
[T]om was born June 26, 2002 and is currently six and one-half years old. This Juvenile has experienced much trauma during his brief life highlighted by being a witness to numerous episodes of domestic abuse between his parents and being the victim of a sexual assault by his uncle in November of 2007. Even prior to the sexual abuse episode T[om] displayed bizarre behaviors at school such as pulling up his teachers' shirts, pulling his pants down and fondling himself, and playing with his own urine. In December 2007 he appeared with bruises and complained of being beaten by his mother. In February 2008 he appeared with additional bruising and it became clear that he was not being protected from his sexual abuser....
Although the mother has been generally compliant and concerned about her son's welfare something in the relationship between the Juvenile and his mother produces the bizarre behaviors.... Immediately after each visit with his mother, T[om] is aggressive with other children to the point of hitting, choking and spitting; he almost always returns from visits with soiled underwear either from urine or feces; [h]e attempts to make himself vomit and is hard to control or direct in school including cursing and making statements that are nonsensical, almost hallucinatory. The foster mother ... testified from an exhaustive daily journal that documented T[om]'s bizarre behaviors that occurred contemporaneously with visits with his mother.... Every time T[om] would make progress in his behavior another visit with his mother would set him back. The foster mother tried to help the biological mother by counseling with her about T[om]'s bathroom procedures, allowed her to return Tom home early from several visits when she could not handle him.... On October 2, 2008 he returned from a maternal visit with a swollen lip complaining that his mother had "flicked" him on the lip upon misbehaving. As a result of these behaviors and incidents visitations were ceased after October 2008. Since the termination of visits with his mother T[om]'s behavior has slowly, yet consistently and continuously improved to where he no longer wets or defecates himself, gets along well with his classmates and teachers, is succeeding in his school work, uses appropriate language and treats his foster family with love and respect. Overall, in the time since his mother's visits were ceased T[om] has made significant changes for the better....
Prior to being in foster care from August 2007 until February 2008 T[om] had 12 absences and 15 tardies. Since being in foster care he has had four absences and one tardy. He does not like to miss school and is no longer fearful or scared about school. All teachers and school personnel corroborated the foster mother's testimony that T[om]'s bizarre behaviors coincided with maternal visits and that the cessation of these behaviors also coincided with the cessation of maternal visits. Melinda Bowers-Dalton noted that school authorities had offered T[om]'s mother therapy for his speech impediment and other developmental delays but that she had refused their help. As a result although he has made *111 tremendous progress T[om] remains one to one and one half years behind his peers. In summary, although T[om]'s mother has gone through the motions of complying with the DSS service agreements including parenting classes, it is clear that she does not possess, nor can she learn to possess, the skills which those classes and other services are designed to teach, particularly regarding a child with the particular disabilities evidenced by T[om], and that reunification of T[om] with either of his parents is contrary to his best interest.
We conclude that the foregoing findings of fact support the trial court's conclusion that further reunification efforts were not required on the ground that reunification would be inconsistent with Tom's "health, safety, and need for a safe, permanent home within a reasonable period of time[.]" N.C. Gen. Stat. § 7B-507(b)(1).
Respondent-mother argues that the findings are not supported by competent evidence, particularly the findings which relate Tom's improvement to cessation of visits with respondent-mother. Respondent-mother's brief argues that "two factors suggest his behavior changes were not related to the visits. First, T[om]'s medication doses changed at the same time and his behavior gradually improved after the medication change. Secondly, T[om]'s behavior had changed in response to medication changes in the past[.]" However, the trial court considered all of the evidence before it, which includes evidence regarding Tom's medication and behavior changes; upon weighing all of the evidence the trial court found that Tom's behavioral changes were related to cessation of visits with respondent-mother. See In re Whisnant, 71 N.C.App. 439, 441, 322 S.E.2d 434, 435 (1984) ("[I]t is [the trial] judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom."). Our review of the transcript reveals that the findings of fact are supported by competent evidence in the form of testimony by Tom's foster mother, a social worker, two teachers, an occupational therapist, and a one-on-one classroom helper. Accordingly, we reject respondent-mother's argument and conclude that the trial court's findings of fact were supported by competent evidence.

IV. Conclusion
For the foregoing reasons, we vacate the order terminating respondent-mother's parental rights and affirm the permanency planning order.
VACATED IN PART; AFFIRMED IN PART.
Judges HUNTER, ROBERT C. and HUNTER, JR., ROBERT N., concur.
NOTES
[1] A pseudonym will be used to protect the identity of the child.