SHARON POWERS AND CLAUDE W. POWERS, PLAINTIFFS V. BRANNON WAGNER AND RADIYYA ALI, DEFENDANTS

No. COA10-689

(Filed 19 July 2011)

**1. Jurisdiction— subject matter—child custody—home state—findings sufficient**

The North Carolina trial court properly exercised jurisdiction over a child custody action where North Carolina was the "home state" of the child and no other jurisdiction had made an initial custody determination that deprived North Carolina courts of subject matter jurisdiction over the matter.

**2. Child Custody and Support— protected status as parent—acted inconsistently—insufficient findings of fact**

The trial court erred in a child custody case by failing to make the necessary findings of fact to support the conclusion that defendant acted inconsistently with her constitutionally protected status as the legal mother of the minor child.

Appeal by defendant Radiyya Ali from order entered 10 November 2009 by Judge Jimmy Love, Jr. in Johnston County District Court. Heard in the Court of Appeals 13 January 2011.

*Mary McCullers Reece for plaintiffs-appellees.*

*Marcia Kaye Stewart for defendant-appellant Radiyya Ali.*

GEER, Judge.

Defendant Radiyya Ali appeals from an order granting permanent legal and physical custody of her child to plaintiffs Sharon and Claude W. Powers ("the Powerses"), her child's paternal grandparents. She contends that the trial court made insufficient findings of fact to support (1) its conclusion that the court had subject matter jurisdiction and (2) its conclusion that she acted inconsistently with her constitutionally-protected right to parent. While the trial court properly concluded that it had subject matter jurisdiction over the proceedings, we hold that the trial court made insufficient findings of fact to support its conclusion of law that defendant Ali acted inconsistently with her constitutional right to parent. The trial court did not resolve the conflicting evidence regarding Ali's intent when she allowed her child to live with and be cared for by the Powerses. Accordingly, we vacate the order and remand to the trial court to make further findings of fact in accordance with this opinion.

## Facts

The trial court found the following facts. Ali, who is a resident of Broward County, Florida, gave birth to her son, "Scott,"[1] in Broward County on 6 June 2006. Defendant Brannon Wagner, who Ali dated for about nine months, is Scott's father. Ali and Wagner separated before Scott was born. Ali has another child residing with her in Florida, who is not Wagner's child.

Wagner did not become involved with his son until Scott was approximately four months old. Ali did not hear anything from Wagner after Scott's birth until Ali contacted Wagner's employer. At that point, Wagner began visiting Scott every other weekend. Sharon and Claude Powers, Wagner's parents, first met Scott over Thanksgiving in 2006.

Ali allowed Scott to go alone to visit Ali's grandmother in Trinidad for approximately two months from December 2006 through February 2007. Ali contends it is part of her West Indian culture to travel to visit relatives for three to four months at a time. In February 2007, Scott resumed residing with defendant Ali.

---

1. The pseudonym "Scott" is used throughout this opinion to protect the minor's privacy and for ease of reading.

Ali initiated a paternity and support action against Wagner through the State of Florida's Department of Revenue. Wagner, in turn, brought a custody action in Florida state court, but later dismissed that action. On 3 April 2007, a Final Administrative Paternity and Support Order was entered against Wagner ordering him to pay $783.30 per month to Ali for the support of Scott. His payment of the court-ordered support was sporadic, and Ali subsequently had his wages garnished.

In June 2007, the Powerses went to Florida to visit Scott. During this visit, Ali asked plaintiffs if they would like to take Scott back to North Carolina with them since Scott had previously visited his maternal grandmother. He stayed with the Powerses for five weeks. Scott then returned to Florida and remained there with Ali for approximately two weeks before returning to North Carolina to stay with the Powerses on 15 August 2007. Ali provided a medical authorization letter to the Powerses so that Scott could receive any necessary medical treatment.

Ali contends that Scott was supposed to stay with Wagner's great-grandmother, Doris, in South Carolina for three months. According to Ali, Sharon Powers was concerned about Doris' health and wanted Scott to return to stay with her in North Carolina instead. The Powerses contend that Wagner asked if they wanted to keep the child because Scott had visited with the maternal grandmother and that they spoke with Ali and agreed to keep Scott due to her work schedule and lack of daycare.

Scott had ongoing problems with his ears after arriving in North Carolina. Sharon Powers would stay up with him during the night and also take Scott to the doctor. Sharon Powers notified both Ali and Wagner of Scott's doctor appointments. The pediatrician recommended that Scott have tubes inserted into his ears. This surgery was scheduled, and in January 2008, Ali was notified of the upcoming surgery. The surgery took place on 31 March 2008.

Ali did not travel to North Carolina for the surgery and did not visit Scott during his recovery. She contends the reason for this failure was twofold. First, she did not want to interrupt Scott's treatment, and secondly, Scott could not fly immediately after having the tubes inserted. In addition, in May 2008, Ali had surgery herself for pre-cancerous conditions. Ali contended that she needed six to eight weeks to recover from that surgery.

On 6 June 2008, Ali visited Scott for his birthday at the Powerses' home. This trip was the first time Ali had been to see Scott in North Carolina since 15 August 2007. During this visit, she purchased a play set to be installed in the Powerses' backyard.

In September 2008, Scott was placed in his current daycare by the Powerses. Ali pays $100.00 per week towards the daycare but keeps the remainder of the child support funds paid to her by Wagner. The Powerses pay for Scott's doctors' copays and prescription drug expenses. The Powerses take Scott to church on a regular basis.

Prior to November 2008, Ali was upset that Wagner would not provide her with his employer's contact information, which she claimed she needed in order to obtain insurance on her own policy for her other son, who is not Wagner's child. Ali then informed Sharon Powers that she was going to take Scott back to Florida.

Ali testified that she traveled to North Carolina one weekend in November 2008. She went to the Benson Police Department to obtain assistance in regaining possession of Scott, but the police department was closed. According to Ali, the Powerses were not at home when she went to their house, and she therefore returned to Florida without Scott. The Powerses were not aware that Ali was going to make this trip to North Carolina.

On 12 December 2008, the Powerses filed a complaint in Johnston County District Court seeking an emergency ex parte custody order and temporary and permanent custody of Scott. On 22 December 2008, the trial court entered an order granting the Powerses emergency ex parte custody. On 17 September 2009, the trial court entered a temporary custody order granting custody of Scott to the Powerses, but providing Ali with visitation two weeks per month. The order allowed Wagner whatever visitation he and the Powerses mutually agreed upon. Wagner had moved from Indiana to North Carolina on 4 March 2009 and was then living with the Powerses.

Over the two years that Scott had lived with the Powerses, Ali never took any legal action to regain custody of Scott. Prior to November 2008, Ali had never even attempted to take physical custody from the Powerses.

On 10 November 2009, the trial court entered a permanent custody order granting the Powerses primary legal and physical custody of Scott, ordering that Wagner have visitation with Scott as mutually

agreed between the Powers and himself, and providing for a structured visitation schedule for Ali. Ali timely appealed to this Court.

I

**[1]** Ali first contends that the trial court's conclusion that it had subject matter jurisdiction over this matter was not supported by adequate findings of fact. "This Court's determination of whether a trial court has subject matter jurisdiction is a question of law that is reviewed on appeal *de novo.*" *Kingston v. Lyon Constr., Inc.*, 207 N.C. App. 703, 707, 701 S.E.2d 348, 351-52 (2010). "In exercising jurisdiction over child custody matters, North Carolina requires the trial court to make specific findings of fact supporting its actions." *Williams v. Williams*, 110 N.C. App. 406, 411, 430 S.E.2d 277, 281 (1993).

Under the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), a North Carolina court has jurisdiction to make an initial child-custody determination if North Carolina is the "home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State[.]" N.C. Gen. Stat. § 50A-201(a)(1) (2009). The "home state" is the state where "a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7) (2009).

In support of her argument, Ali points to *In re J.B.*, 164 N.C. App. 394, 398, 595 S.E.2d 794, 797 (2004), in which this Court vacated and remanded because the trial court had failed to makes sufficient findings of fact regarding subject matter jurisdiction. In *In re J.B.*, however, "the record [was] devoid of evidence from which [this Court] [might] ascertain whether or not the trial court possessed subject matter jurisdiction . . . ." *Id.*

Here, by contrast, the trial court made findings of fact that on 15 August 2007, Scott "came to North Carolina to stay with" the Powers, and Ali never took any legal action after that date to regain custody of Scott. The Powers placed Scott in daycare, took him to his doctor's appointments, and paid for his medical expenses. These findings, which are unchallenged on appeal, are sufficient to establish that Scott resided in North Carolina with the Powers, who were acting as parents, for at least six months prior to the filing of this cus-

tody action. North Carolina was, therefore, Scott's home state for purposes of this proceeding, and the trial court had subject matter jurisdiction even though the trial court's findings did not expressly track the language in N.C. Gen. Stat. § 50A-102(7). We note that it is the better practice for the trial court to make an express finding about the child's home state.

Ali next contends that the trial court erred in concluding it had jurisdiction over this matter because Florida had already exercised jurisdiction. Under the Parental Kidnapping Prevention Act ("PKPA"), "[t]he appropriate authorities of every State shall enforce according to its terms, and shall not modify . . . any custody determination or visitation determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A(a) (2006).

"Once a State exercises jurisdiction consistently with the provisions of the Act, no other State may exercise concurrent jurisdiction over the custody dispute even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree." *Thompson v. Thompson*, 484 U.S. 174, 177, 98 L. Ed. 2d 512, 518-19, 108 S. Ct. 513, 515 (1988) (internal citation omitted).

Here, a Florida tribunal entered a Paternity and Support Order on 3 April 2007 concluding that Wagner was the legal and biological father of Scott. The Florida order directed Wagner to pay child support to Ali, to provide health insurance for Scott, and to pay half of all medical expenses not covered by insurance. Ali contends that Florida, through this order, was exercising jurisdiction as to the issue of Scott's custody and that this order amounted to a child custody determination.

The definition of "[c]hild-custody determination," however, expressly excludes "an order relating to child support or other monetary obligation of an individual." N.C. Gen. Stat. § 50A-102(3). To qualify as a child custody determination, the order must instead provide "for the legal custody, physical custody, or visitation with respect to a child." *Id.*

Ali argues that the order "went beyond a mere support order" because it included as finding of fact number four that "Radiyya Ali, the Custodial Parent, has custody of the child, and the primary residence of the child is with the Custodial Parent." Yet, this finding of fact does not amount to an award of custody to Ali. The finding merely sets out the fact that Scott was living with Ali and, therefore, Wagner was required to pay child support to Ali.

Because the Florida order did not provide for legal custody, physical custody, or visitation, it was not a child custody determination. The North Carolina trial court, therefore, properly exercised jurisdiction over this action because North Carolina is the "home state" of Scott, and no other jurisdiction had made an initial determination that deprived North Carolina courts of subject matter jurisdiction over this custody matter.

## II

**[2]** Ali next contends that the trial court erred in concluding that she acted inconsistently with her constitutionally protected status as the legal mother of the minor child. " 'Our trial courts are vested with broad discretion in child custody matters.' " *Miller v. Miller*, 201 N.C. App. 577, 578, 686 S.E.2d 909, 911 (2009) (quoting *Martin v. Martin*, 167 N.C. App. 365, 367, 605 S.E.2d 203, 204 (2004)). Even when the evidence is conflicting, the findings of fact in child custody and support matters are conclusive if they are supported by competent evidence. *Dixon v. Dixon*, 67 N.C. App. 73, 76, 312 S.E.2d 669, 672 (1984).

Here, the trial court concluded that "the Defendants have acted inconsistently with their constitutionally protected status as the biological parents of the minor child." Our Supreme Court recently addressed the issue of when a parent has acted inconsistently with her constitutionally-protected right to parent in *Boseman v. Jarrell*, 364 N.C. 537, 539, 704 S.E.2d 494, 496 (2010). In *Boseman*, the parties, who were domestic partners, jointly decided to have a child and jointly raised the child with each woman acting as a parent. *Id.*, 704 S.E.2d at 496-97. Although the defendant was the biological mother, the parties attempted to obtain an adoption decree in Durham County so that the plaintiff would also be a legal parent of the child. *Id.* at 540, 704 S.E.2d at 497.

Subsequently, the parties separated, but the plaintiff continued to provide most of the child's financial support. *Id.* at 541, 704 S.E.2d at 498. After the parties separated, the plaintiff sued for custody, while the defendant challenged the validity of the adoption decree. *Id.* The trial court upheld the adoption decree and granted the parties joint custody of the child. *Id.*

Although the Supreme Court concluded that the adoption was invalid, the Court affirmed the custody decision, concluding that "because defendant has acted inconsistently with her paramount parental status, the trial court did not err by employing the 'best interest of the child' standard to reach its custody decision." *Id.* at 553, 704

S.E.2d at 505. The Supreme Court first observed that "[a] parent has an 'interest in the companionship, custody, care, and control of [his or her children that] is protected by the United States Constitution.' " *Id.* at 549, 704 S.E.2d at 502 (quoting *Price v. Howard*, 346 N.C. 68, 73, 484 S.E.2d 528, 531 (1997)). As long as a parent acts consistently with this interest, a custody dispute with a nonparent cannot be determined by use of the "best interest of the child" test. *Id.*, 704 S.E.2d at 503.

A natural parent need not be unfit or abandon or neglect her child in order to have "engaged in some other conduct inconsistent with her paramount parental status." *Id.* at 550, 704 S.E.2d at 503. The Court pointed out that "under *Price*, when a parent brings a nonparent into the family unit, represents that the nonparent is a parent, and voluntarily gives custody of the child to the nonparent without creating an expectation that the relationship would be terminated, the parent has acted inconsistently with her paramount parental status." *Id.* at 550-51, 704 S.E.2d at 503. The Court explained further that "if a parent cedes paramount decision-making authority, then, so long as he or she creates no expectation that the arrangement is for only a temporary period, that parent has acted inconsistently with his or her paramount parental status." *Id.* at 552, 704 S.E.2d at 504.

The Court recognized that intent was a critical issue. It pointed out that in *Price,* although the biological mother had completely relinquished custody of her child for a period of time, the Supreme Court had remanded for further findings because "there remained a factual issue regarding whether the relinquishment was intended to be only temporary . . . ." *Boseman,* 364 N.C. at 552, 704 S.E.2d at 504.

Applying the same analysis ultimately adopted in *Boseman,* this Court explained the importance of the parent's intent in *Estroff v. Chatterjee,* 190 N.C. App. 61, 70, 660 S.E.2d 73, 78-79 (2008) (internal citation omitted):

> [T]he court's focus must be on whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a sufficiently significant amount of parental responsibility and decision-making authority to create a *permanent parent-like relationship* with his or her child. The parent's intentions regarding that relationship are necessarily relevant to that inquiry. By looking at both the legal parent's conduct and his or her intentions, we ensure that the situation is not one in which the third party has assumed a parent-like status on his or her own without that being the goal of the legal parent.

(Emphasis added.) Consequently, in deciding whether a parent has acted inconsistently with her constitutionally-protected right to parent, the trial court must "consider the legal parent's intentions regarding the relationship between his or her child and the third party during the time that relationship was being formed and perpetuated." *Id.* at 69, 660 S.E.2d at 78.

In *Estroff*, this Court upheld the trial court's determination that the defendant, who—like the defendant in *Boseman*—gave birth while in a domestic partnership, had not acted inconsistently with her constitutionally paramount status as a parent. The trial court's findings of fact had established that the defendant biological mother did not "choose to create a family unit with two parents, did not intend that [the plaintiff] would be a '*de facto* parent,' *Price*, 346 N.C. at 83, 484 S.E.2d at 537, and did not allow [the plaintiff] to function fully as a parent. Instead, according to the trial court's findings, [the defendant] saw [the plaintiff] as 'a significant, loving adult caretaker but not as a parent.'" 190 N.C. App. at 74, 660 S.E.2d at 81. Ultimately, this Court held that "[t]he fact that a third party provides caretaking and financial support, engages in parent-like duties and responsibilities, and has a substantial bond with the children does not necessarily meet the requirements of *Price* and *Mason* [*v. Dwinnell*, 190 N.C. App. 209, 660 S.E.2d 58 (2008).]" *Id.*

Here, the trial court determined that defendant Ali and defendant Wagner "acted in a manner inconsistent with their constitutionally protected status as a parent in that they voluntarily relinquished custody of the minor child for a minimum of fifteen (15) months to the Plaintiffs." Further, the trial court found "[t]hat since August 15, 2007, the Defendants have voluntarily allowed the Plaintiffs to function as parents in the day to day life of the minor child. That during said period, Defendants were able to care and provide for the minor child and chose not to do so." Finally, the court found "[t]hat since August 15, 2007, the Defendants have fostered the forging of a parental bond between the Plaintiffs and the minor child."

The finding that Ali voluntarily relinquished custody of Scott to the Powerses does not, however, address the requirement in *Boseman* (originally set out in *Price*) that the trial court determine whether "the relinquishment was intended to be only temporary . . . ." *Boseman*, 364 N.C. at 552, 704 S.E.2d at 504. Further, the findings that Ali allowed the Powerses to function on a day-to-day basis as parents and fostered the forging of a parental bond focuses only on Ali's con-

duct without also considering Ali's intentions at the time she allowed Scott to go to the Powerses.

With respect to Ali's intentions and whether her relinquishment was intended to be temporary or for an indefinite period, the trial court found only:

> 21. That the plaintiffs and defendant Ali differ in their accounts of why the child was returned on August 15, 2007 to the plaintiffs in North Carolina. Plaintiffs contend that Defendant Wagner called and asked if they wanted to keep the minor child since the maternal grandmother had a visit. That the Plaintiffs say they talked with Defendant Ali and agreed to keep the minor child due to Defendant Ali's employment schedule and lack of daycare. Defendant Ali contends the minor child was to stay [with] Defendant Wagner's great grandmother Doris in South Carolina for three months and that plaintiff Sharon Powers had concerns about Doris' health and wanted the minor child to instead return to North Carolina.

This finding simply sets out the parties' contentions without resolving the dispute between the parties.

" 'Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show.' " *In re C.M.*, 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007) (quoting *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 366 (2000)). The trial court was required to resolve the dispute in the evidence and make the findings required by *Boseman, Price,* and *Estroff.*

In this case, in addition to Ali's testimony, plaintiff Claude Powers was asked, "you say you knew all along that at some point she was coming to get her son?" He responded, "That's correct." Shortly thereafter, Mr. Powers acknowledged that "we knew that we were not keeping [Scott] for his entire lifetime."

On the other hand, our Supreme Court noted in *Price:*

> [T]here are circumstances where the responsibility of a parent to act in the best interest of his or her child would require a temporary relinquishment of custody, such as under a foster-parent agreement or during a period of service in the military, a period of poor health, or a search for employment. However, to preserve the constitutional protection of parental interests

in such a situation, the parent should notify the custodian upon relinquishment of custody that the relinquishment is temporary, and the parent should avoid conduct inconsistent with the protected parental interests. Such conduct would, of course, need to be viewed on a case-by-case basis, but may include failure to maintain personal contact with the child or failure to resume custody when able.

*Price*, 346 N.C. at 83-84, 484 S.E.2d at 537. While the record contains evidence related to the scenarios identified in *Price*, it was the responsibility of the trial court to make the necessary factual findings.

Without the necessary findings, there can be no determination that Ali acted inconsistently with her constitutional right to parent. The trial court, after concluding that Ali acted inconsistently with that right, then applied the "best interest of the child" standard and concluded that it was in Scott's best interest for the Powerses to have permanent custody of him. This determination was premature.

"If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the 'best interest of the child' standard in a custody dispute with a nonparent would offend the Due Process Clause." *Id.* at 79, 484 S.E.2d at 534. We, therefore, vacate the entire order and remand for further findings of fact consistent with *Boseman, Price*, and *Estroff*. Only if the trial court, after applying those decisions, again determines that Ali acted inconsistently with her constitutional right to parent may the trial court apply the best interest standard in deciding who should have custody of Scott.

Vacated and remanded.

Judges BRYANT and STEPHENS concur.