NO. COA14-79

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:

J.C.                                    Johnston County
J.C.                                    Nos. 13 JA 101-02


Appeal by respondent mother from orders entered 15 and 22 October 2013 by Judge Resson Faircloth in Johnston County District Court.  Heard in the Court of Appeals 16 June 2014.

> *Holland & O'Connor, by Jennifer S. O'Connor, for petitioner-appellee Johnston County Department of Social Services.*
>
> *Richard Croutharmel for respondent-appellant mother.*
>
> *Marie H. Mobley for guardian ad litem.*


ELMORE, Judge.


Respondent mother appeals from the trial court's orders adjudicating the juveniles neglected and dependent.  Respondent contends that the trial court made insufficient findings to demonstrate it had obtained jurisdiction over the matter, made insufficient findings to support its order adjudicating the juveniles neglected and dependent, and improperly required respondent to pay the costs of her visitation.  We affirm the

adjudication of neglect and the disposition order, but remand for correction of a clerical error as to the adjudication of dependency.

The juveniles were born in 2007. Kentucky authorities became involved with the family in 2008 based on reports of domestic violence between respondent and the juveniles' father. A Kentucky court granted the father custody of the juveniles. The family moved to North Carolina in December of 2011, and respondent and the father have been involved in domestic violence and custody disputes in North Carolina since March of 2012.

On 31 May 2013, the Johnston County Department of Social Services ("DSS") substantiated a report of neglect due to an injurious environment, based on the parents' unresolved conflict and its negative impact on the juveniles. That conflict included concerns that the juveniles had made false accusations of sexual abuse against their father at respondent's behest. On 27 June 2013, DSS filed petitions alleging that the juveniles were neglected and dependent, and it filed amended petitions on 11 July 2013.

The matter came on for an adjudication hearing on 29 August 2013. At the conclusion of the hearing, the trial court made an

oral finding that the juveniles were neglected. The trial court entered its initial adjudication order on 4 October 2013, and entered an amended order on 22 October 2013. In the written orders, the trial court adjudicated the juveniles neglected and dependent. The disposition hearing took place on 12 September 2013. The trial court placed the juveniles in the custody of their paternal grandmother and provided respondent with supervised visitation to be held at a visitation center at her expense. Respondent appeals.

In her first argument on appeal, respondent contends that the trial court failed to make adequate findings to establish its jurisdiction, in light of the prior case in Kentucky. We disagree.

"This Court's determination of whether a trial court has subject matter jurisdiction is a question of law that is reviewed on appeal *de novo*." *Powers v. Wagner*, 213 N.C. App. 353, 357, 716 S.E.2d 354, 357 (2011) (citation and quotation omitted). The district court has "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C. Gen. Stat. § 7B-200(a) (2013). The jurisdictional requirements of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") must

also be satisfied for a court to have authority to adjudicate petitions filed pursuant to the Juvenile Code. *In re Brode*, 151 N.C. App. 690, 692-94, 566 S.E.2d 858, 860-61 (2002).

Under the UCCJEA, a North Carolina court has jurisdiction to make an initial child-custody determination if North Carolina "is the home state of the child on the date of the commencement of the proceeding[.]" N.C. Gen. Stat. § 50A-201(a)(1) (2013). A child's "home state" is "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7) (2013). Although this Court has recognized that making specific findings of fact related to a trial court's jurisdiction under N.C. Gen. Stat. § 50A-201(a)(1) "would be the better practice," the statute "states only that certain circumstances must exist, not that the court specifically make findings to that effect." *In re T.J.D.W.*, 182 N.C. App. 394, 397, 642 S.E.2d 471, 473, *aff'd per curiam*, 362 N.C. 84, 653 S.E.2d 143 (2007). Therefore, so long as the trial court asserts its jurisdiction and there is evidence to satisfy the statutory requirements, the trial court has properly exercised subject matter jurisdiction. *Id*. at 397, 642 S.E.2d at 473-74.

In this case, the trial court made a finding that it had jurisdiction to enter an adjudication order, and the evidence shows that the juveniles have continuously resided with a parent in North Carolina since December of 2011. Although, as we have previously held, it would be the better practice for the trial court to make more specific findings of fact to support its jurisdiction, the evidence was sufficient to support the trial court's assertion of jurisdiction pursuant to N.C. Gen. Stat. § 50A-201(a)(1). Accordingly, respondent's first argument lacks merit.

Next, respondent contends that the trial court erred by adjudicating the juveniles neglected and dependent. We first address respondent's argument that the trial court erred by adjudicating the juveniles neglected. Respondent disputes the trial court's conclusion that the effect of the parents' domestic violence and discord on the juveniles was sufficient to support an adjudication of neglect. Respondent also disputes the trial court's finding that respondent failed to submit to DSS's in-home services. We do not agree with respondent's contentions.

"The allegations in a petition alleging abuse, neglect, or dependent shall be proved by clear and convincing evidence."

N.C. Gen. Stat. § 7B-805 (2013). In reviewing an adjudication order, this Court must determine "(1) whether the findings of fact are supported by 'clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). "In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997).

N.C. Gen. Stat. § 7B-101, in part, defines a neglected juvenile as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent" or "who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2013). A parent's refusal to cooperate with DSS's attempts to offer services and a "long standing" and "enduring" history of domestic violence between the parents are factors that support an adjudication of neglect. *In re B.M.*, 183 N.C. App. 84, 89, 643 S.E.2d 644, 647 (2007).

Here, the trial court's findings of fact support its conclusion that the juveniles were neglected. The trial court found that the parents' history of domestic violence dated back

to the initial investigation in Kentucky, that the juveniles were aware of the violence and domestic discord, and that a Child and Family Evaluation indicated that the parents were not able to parent the juveniles due to "their continued conflicts with each other and the impact the conflicts have on the children." Specifically, the trial court found:

> 16. [T]he children were negatively impacted by witnessing the parents' domestic discord and that it caused the children emotional stress. The Court further finds that the children were put in the middle of the parents' dispute, which also caused stress upon the children. The Court is further concerned about the children being coached to make allegations in an effort to circumvent the domestic action.

In addition, the trial court found that respondent refused to develop an in-home services agreement with DSS to address the identified issues.

Contrary to respondent's contentions, these findings are supported by the evidence introduced at the adjudication hearing, specifically the testimony of a social worker, and in turn support the trial court's conclusion that the juveniles were neglected. Respondent points to her own testimony that she only "hesitated" in response to DSS's efforts to implement in-home services, but the trial court was free to weigh that testimony against the social worker's contradictory testimony

and make a finding adopting one point of view. Accordingly, we hold that the evidence and the trial court's findings of fact support the adjudication of neglect.

Next, as respondent correctly points out, at the hearing the trial court orally concluded that the juveniles were neglected, but both the original and amended adjudication orders contain conclusions, made by checking boxes on each of the pre-printed portions of the orders, that the juveniles were neglected and dependent. We believe that the trial court's checking of the box for dependency represents a clerical error.

"A clerical error is an error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination." *State v. Jones*, ___ N.C. App. ___, ___, 736 S.E.2d 634, 637 (2013) (citations and quotations omitted). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth.'" *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (citations omitted).

In this case, although DSS filed petitions alleging that the juveniles were both neglected and dependent, it only argued

that they were neglected at the adjudication hearing. The trial court orally concluded that the juveniles were neglected and made findings of fact supporting that conclusion, but made none to support a conclusion that they were dependent. Accordingly, it appears that the "dependent" box on the adjudication form was inadvertently checked, and the matter should be remanded for entry of a new adjudication order that reflects the trial court's conclusion that the juveniles were neglected, but not dependent.

Finally, respondent contends that the trial court erred by ordering her to pay the costs of her supervised visitation. We disagree.

In 2013, the General Assembly enacted N.C. Gen. Stat. § 7B-905.1 (2013), which sets out the requirements for findings regarding visitation in abuse, neglect, and dependency cases.[1] Under the new statute, a disposition order that removes a juvenile from a parent's custody "shall provide for appropriate visitation as may be in the best interests of the juvenile

---

[1] Formerly, visitation was addressed in the disposition statute, N.C. Gen. Stat. § 7B-905(c) (2011). Section 7B-905.1 was effective 1 October 2013, and applies to actions "filed or pending on or after that date." 2013 N.C. ALS 129. The disposition order in this matter was entered 15 October 2013. Therefore, the matter was pending as of the effective date of the new statute, and we must review the disposition order under the terms of the new statute.

consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a) (2013). The new statute describes the findings the trial court must make defining the conditions of visitation when a child is placed with a relative, as is the case here:

> (c) If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. The court may authorize additional visitation as agreed upon by the respondent and custodian or guardian.

N.C. Gen. Stat. § 7B-905.1(c) (2013). The terms of the statute are consistent with our case law interpreting the visitation findings required by N.C. Gen. Stat. § 7B-905(c), the prior statute. *See In re J.P.*, ___ N.C. App. ___, ___, 750 S.E.2d 543, 547 (2013) (holding that a disposition order must, at a minimum, set out the time, place, and conditions of visitation).

In this case, the trial court made a finding that squarely addresses all three requirements of N.C. Gen. Stat. § 7B-905.1(c): "[Respondent] is to have a supervised visit every other week for one hour via a supervised visitation center, at her expense." Respondent does not challenge the sufficiency of this finding as to the statutory requirements and concedes that

the trial court made findings that support its decision that supervised visitation was in the juveniles' best interests under the circumstances.

Instead of challenging the need for supervised visitation or the trial court's findings, respondent first contends that the Juvenile Code does not permit the trial court to order her to pay the cost of supervised visitation. When an argument presents an issue of statutory interpretation, full review is appropriate, and the trial court's conclusions of law are reviewed *de novo*. *Romulus v. Romulus*, 216 N.C. App. 28, 32, 715 S.E.2d 889, 892 (2011) (citations omitted). "'If the language of the statute is clear, this Court must implement the statute according to the plain meaning of its terms.'" *Whitman v. Kiger*, 139 N.C. App. 44, 46, 533 S.E.2d 807, 808 (2000), *aff'd per curiam*, 353 N.C. 360, 543 S.E.2d 476 (2001) (citation omitted).

Here, respondent's argument is contradicted by the plain language of the statute, which provides: "The court may specify in the order conditions under which visitation may be suspended." N.C. Gen. Stat. § 7B-905.1(a). Thus, in the best interests of the juvenile, the trial court has the authority to set conditions for visitation, as the trial court did in this

case by requiring respondent to pay the costs of visitation. We also note that other sections of the Juvenile Code, including N.C. Gen. Stat. § 7B-903 and -904, permit the trial court to impose costs on the parents of a juvenile adjudicated abused, neglected, or dependent. Accordingly, we disagree with respondent's contention that the Juvenile Code does not authorize the trial court to order her to pay the costs of supervised visitation.

Next, respondent contends the trial court erred by ordering her to pay the costs of supervised visitation without making any findings that she was able to do so. Respondent cites no authority to support her assertion that such findings are required pursuant to N.C. Gen. Stat. § 7B-905.1, or its predecessor, N.C. Gen. Stat. § 7B-905(c). Instead, respondent relies on case law interpreting other statutes, including N.C. Gen. Stat. § 7B-904 and N.C. Gen. Stat. § 50-13.4, to support her argument. *See*, *e.g.*, *In re W.V.*, 204 N.C. App. 290, 296-97, 693 S.E.2d 383, 388 (2010) (holding that the trial court must make findings that a parent is able to pay a reasonable portion of the cost of foster care before ordering her to do so).

We find respondent's argument on this point to be unpersuasive. The section of the Juvenile Code cited in *In re*

*W.V.* specifically instructs courts to consider the parents' ability to pay. *See* N.C. Gen. Stat. § 7B-904(d) (providing that the trial court may order a parent to pay support "if the court finds that the parent is able to do so"). This specific directive is significant in interpreting the intent of the legislature in enacting the statute, and there is no such statutory instruction as to the costs of supervised visitation in the recently enacted N.C. Gen. Stat. § 7B-905.1(c). Further, the terms of the disposition order in this case account for a 90-day review hearing, and N.C. Gen. Stat. § 7B-905.1(d) (2013) specifically authorizes all parties to "file a motion for review of any visitation plan entered pursuant to this section." N.C. Gen. Stat. § 7B-905.1(d).

Thus, respondent has ample opportunity to present evidence of her inability to pay the cost of supervised visitation and have the visitation plan modified, should the need arise. Accordingly, we affirm the visitation portion of the disposition order.

In sum, we affirm the trial court's adjudication of neglect and the disposition order, but remand the matter for correction of clerical error in the adjudication order.

Affirmed, in part; remanded, in part.

Chief Judge MARTIN concurs.

Judge HUNTER, Robert N., concurs in part and dissents in part by separate opinion.

NO. COA14-79

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:

J.C.                          Johnston County
J.C.                          Nos. 13 JA 101-02

HUNTER, JR., Robert N., Judge, concurring in part and dissenting in part.

Though I agree with the majority's decision to affirm the trial court's adjudication of neglect and to remand for correction of a clerical error as to the adjudication of dependency, I cannot agree with the majority's decision to affirm the visitation portion of the disposition order. Pursuant to N.C. Gen. Stat. § 7B-905.1(a) (2013), the trial court should consider a parent's ability to pay before requiring the parent to pay supervised visitation costs. Accordingly, because the court below ordered respondent to pay the costs of supervised visitation without making any findings that she was able to do so, I respectfully dissent from the majority on this issue.

The potential consequences of failing to pay the costs of supervised visitation includes having visitation suspended, a condition which, if uncured, could ultimately lead to the

termination of parental rights. This Court has consistently held that a parent's poverty, alone, should not be grounds for termination of parental rights. *See In re T.D.P.*, 164 N.C. App. 287, 290-91, 595 S.E.2d 735, 738 (2004), *aff'd per curiam*, 359 N.C. 405, 610 S.E.2d 199 (2005). Denying visitation to a poor parent who was required, but unable, to pay the costs of visitation conditions an important constitutional right on wealth. As judges, we have a duty to construe statutes so that their application would not violate either the Constitution of North Carolina or the United States Constitution. *See, e.g.*, *Appeal of Arcadia Dairy Farms, Inc.*, 289 N.C. 456, 465, 223 S.E.2d 323, 328 (1976) ("If a statute is reasonably susceptible of two constructions, one of which will raise a serious question as to its constitutionality and the other will avoid such question, it is well settled that the courts should construe the statute so as to avoid the constitutional question."). Requiring the trial court to make findings of fact addressing a parent's ability to pay before ordering the parent to pay the costs of supervised visitation would obviate any unconstitutional result.

Accordingly, because N.C. Gen. Stat. § 7B-905.1(a) is silent as to whether the trial court must make the findings at

issue, and because the majority's holding could lead to undesirable outcomes for poverty-stricken parents, I respectfully dissent. I would remand the disposition order for further findings of fact addressing respondent's ability to pay the costs of supervised visitation before entering such an order.