An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-105

Filed 15 October 2025

Durham County, No. 21JA000103-310

IN THE MATTER OF: K.R.

Appeal by respondent-mother from order entered 24 July 2024 by Judge Doretta L. Walker in Durham County Juvenile District Court. Heard in the Court of Appeals 25 September 2025.

> *J. Thomas Diepenbrock for respondent-appellant mother.*
>
> *Keith T. Roberson for petitioner-appellee Durham County Department of Social Services*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Samuel J. Ervin, IV, for appellee Guardian ad Litem*

ARROWOOD, Judge.

Respondent-mother ("mother") petitions for this Court to issue its writ of certiorari to review a Permanency Planning Hearing Order filed 6 September 2023 by the Honorable Doretta L. Walker. Respondent-mother also appeals a Permanency Planning Hearing Order filed 24 July 2024 by Judge Walker. For the following reasons, we decline to issue the writ and affirm the trial court's order.

## I.    Background

K.R. ("Kamil")[1] was born 4 February 2021.  On 11 August 2021, the Durham County Department of Social Services ("DSS") filed a juvenile petition alleging that Kamil was a neglected juvenile.  DSS alleged that on 14 July 2021 Kamil tested positive for methadone and cocaine and was administered Narcan.  Social Worker Ernest Johnson initiated Child and Family Team ("CFT") procedures and informed Kamil's parents that he could not return home, due to the severity of the report and respondent-mother's past drug use, which had already resulted in DSS taking her four older children into custody.  After the CFT process, Kamil was placed in his father's care.  Four days later at his father's home, Kamil was alleged to have been thrown onto a sofa during a domestic abuse incident between the parents.  Kamil was then placed with his paternal grandmother under a temporary safety agreement.

On 12 August 2022, the Honorable Doretta L. Walker entered an adjudication and disposition order finding the facts to be as alleged in the petition and adjudging that Kamil was neglected.  The court found that respondent-mother had only "minimal contact" with the case's current social worker, that her substance abuse counselor stated "maintaining contact" had been an issue, that mother was reported to have regularly failed to attend appointments for direct care services, that she was not "currently engaged in mental health services," and that she was still residing with

---

[1] "Kamil" is a pseudonym the parties have agreed upon to protect the juvenile's privacy.

Kamil's father. As a result, the court placed Kamil in the legal custody of DSS and ordered respondent-mother to work towards reunification by, among other tasks, obtaining independent housing and stable employment, maintaining contact with the social worker, and participating in supervised visitation, substance abuse treatment, random drug screens, parenting classes, mental health treatment, and anger management. Kamil remained in his grandmother's care.

On 6 September 2023, the trial court entered a Permanency Planning Hearing Order (the "initial PPO") determining that Kamil continued to do well living with his grandmother. However, the court found that respondent-mother's relationship with Kamil's grandmother had become hostile and that mother's visits were irregular. The court also found it was unable to confirm respondent-mother's home address, that she failed to show documentation of completed services or to sign releases for DSS to access her records, that she was discharged from the "Stand Up Speak Out" program before re-enrolling, and that she was continuing to obtain methadone from BAART, but that her social worker was unable to obtain information about "the nature of therapeutic services." As a result, the court ordered that Kamil's custodial situation continue and that respondent-mother work towards reunification by participating in specified services and supervised visitation and obtaining safe and stable housing and income. The Court then ordered that Kamil's primary plan of care was custody with a court-approved caretaker and his secondary plan of care was reunification with his father. Respondent-mother did not appeal the initial PPO.

On 24 July 2024, the court filed a second Permanency Planning Hearing Order (the "second PPO") in which the trial court made factual findings that Kamil was developmentally on target and attending day care. The court made extensive factual findings, reporting: "[It] is not likely for the child to return home immediately or within the next six months. Reunification efforts . . . previously ceased and [respondent-mother] has not shown any areas of improvement that would allow reunification." The court found that the parents had not consistently provided financial assistance for Kamil and that respondent-mother has maintained employment and "has the ability to pay for a supervising agency should the need arise," but that she failed to provide information about her activity with the required services, that her visitation was irregular, that her participation with Stand Up Speak Out was inconsistent, and that she had not received mental health therapy through them. Kamil's grandmother testified that she had gone "over a year" without visiting Kamil.

Ultimately, the court found that DSS's reunification efforts "would clearly be unsuccessful or inconsistent with the minor child's health or safety and should therefore cease." The court concluded that "the parents have acted contrary to their parental rights," that guardianship was the best primary plan for the child, and that custody with a court-approved caretaker is the best secondary plan. The court ordered that Kamil's grandmother maintain guardianship and physical custody

indefinitely. Respondent-mother filed notice of appeal from the second PPO on 18 September 2024.

## II. Discussion

Respondent-mother appeals the second PPO and submits a petition for this court to issue its writ of certiorari to review the initial PPO. We discuss each in turn.

### A. Respondent-Mother's Petition for Writ of Certiorari

Certiorari is a discretionary writ which may "be issued only for good or sufficient cause shown," and requires "merit or that [the petitioner] has reasonable grounds for asking that the case be brought up and reviewed on appeal." *In re Snelgrove*, 208 N.C. 670 (1935) (citation omitted). Accordingly, a proper petition for the writ will show merit or error by the lower court. *State v. Grundler*, 251 N.C. 177, 189 (1959). "[E]xtraordinary circumstances" must justify this writ, generally requiring a showing of "substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.' " *Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 572–73 (2023) (citations omitted). Our decisions on these petitions are "discretionary determinations to be made on a case-by-case basis." *State v. Ricks*, 378 N.C. 737, 740 (2021) (cleaned up).

"A writ of certiorari is not intended as a substitute for a notice of appeal." *Id.* at 741. A petition for writ must be filed "without unreasonable delay." N.C. R. App. P. 21(c). Neglect in filing a notice of appeal may be excusable depending upon the

circumstances and what "may be reasonably expected of a party in paying proper attention to [her] case." *Sellers v. FMC Corp.*, 216 N.C. App. 134, 141 (2011).

Respondent-mother concedes that she was represented by counsel throughout the proceedings and that no appeal of the PPO was filed. She attributes the failure solely to her attorney and claims she lost her right to appeal "through no fault of her own." However, she neglected to dispute the validity of the order for over a year. Further, she does so only after the court returned to the matters addressed by the initial PPO, gave her a hearing and considered her evidence, and determined the necessity of implementing a permanent plan for Kamil. Accordingly, the delay here is unreasonable and not excusable.

Further, the petition fails to show merit or error by the lower court. Respondent-mother argues that the order neglected to make the statutorily required written findings regarding: the adequacy of the parent's progress under the plan; the parent's participation, cooperation, and availability; whether the parent's behavior is "inconsistent with the health or safety of the juvenile;" and, if reunification is eliminated as a primary or secondary plan, that such efforts would be "unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time." N.C.G.S. §§ 7B-906.1, 7B-906.2.

The trial court's written findings under the Juvenile Code "need not track the statutory language verbatim, but . . . must make clear that the trial court considered the evidence in light of whether reunification would be clearly unsuccessful or would

be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." *In re L.L.,* 386 N.C. 706, 716 (2024) (citations omitted). "Only those factors which demonstrate the degree of success or failure toward reunification require written findings." *Id.*

Contrary to respondent-mother's argument, Judge Walker made factual findings concerning her progress, participation, cooperation, availability, and behavior. The PPO shows that the court considered all her offered evidence and found it did not display the commitment and compliance the court would have recognized as sufficient work towards reunification. The court made findings concerning her failures to consistently visit Kamil, maintain communication with the necessary actors, stay enrolled in Stand Up Speak Out, refrain from conflict with Kamil's father, or show regular engagement with mental health services. The court also made abundantly clear what would be expected of mother to make reunification more likely. "Based upon" those findings of fact, the court found that it was contrary to Kamil's health and safety for him to be returned to her custody and set a schedule for the matter's review.

The order is clearly more than sufficient under the controlling *In re L.L.* standard, as it properly and adequately addresses whether reunification efforts were, at present, consistent with Kamil's best interests. Accordingly, this Court can find no error committed below and no merit in respondent-mother's argument. Because no extraordinary circumstances justify issuing writ of certiorari, we deny her petition

and lack jurisdiction to reach the merits of respondent-mother's arguments as to the initial PPO.

## B.     Appeal of the Second PPO

Mother makes two arguments on appeal from the second order.  First, she argues that the court erred by failing to make proper findings of fact concerning her ability to pay for court-ordered supervised visitation, claiming that the order "does not identify the supervising agency, or the cost of supervision by such agency, or [her] ability to pay those costs."  Second, she argues the court ceased requiring future review proceedings without making the required findings of facts to support that decision by "clear, cogent, and convincing evidence."

Appellate review of a PPO is "limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." *In re J.V. & M.V.,* 198 N.C. App. 108, 112 (2009) (brackets omitted).  The trial court's factual findings are binding and conclusive on appeal "when supported by any competent evidence, even if the evidence could sustain contrary findings." *In re L.T.R. & J.M.R.,* 181 N.C. App. 376, 381 (2007).  We review the trial court's conclusions of law *de novo. In re T.R.M.,* 208 N.C. App. 160, 162 (2010).  Questions of statutory interpretation are questions of law.  *In re D.S.,* 364 N.C. 184, 187 (2010).  We also review *de novo* whether a trial court complied with a statutory mandate, failure of which is reversible error.  *In re D.A.,* 169 N.C. App. 245, 247-248 (2005).  Interpretations of the juvenile code are guided by the "polar star" of the best interests

of the child. *In re M.I.W.*, 365 N.C. 374, 381 (2012). The trial court's discretionary rulings are not to be disturbed without a showing of manifest abuse of discretion. *In re Black*, 76 N.C. App. 106, 110 (1985). Unchallenged findings of fact are "presumed to be supported by competent evidence" and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97 (1991).

### 1.    Sufficiency of the Findings as to the Cost of Visitation

In an order providing for visitation when a juvenile remains in the custody or guardianship of a relative, the court must "specify the minimum frequency and length of the visits and whether the visits shall be supervised." N.C.G.S. § 7B-905.1(c). The second PPO specified that respondent-mother would have visitation for two hours minimum biweekly and granted the placement authority to supervise the visits and ordered that mother identify and pay for agency supervision "if it becomes necessary due to excessive missed visits." The court also found after reviewing the pay stubs offered by mother and included in the record, that she "has the ability to pay for a supervising agency should the need arise," and that "[since] the last court hearing, [she] has visited with [Kamil] only a few times . . . the relationship between [respondent-mother] and [Kamil's grandmother] has declined and is at times hostile."

On appeal, respondent-mother argues that the court erred because it did not "identify the supervising agency, or the cost of supervision by such agency, or [her] ability to pay those specific costs." Respondent-mother cites the line of cases derived from *In re J.C.*, in which our Supreme Court remanded for further findings to

determine "whether respondent mother was able to pay for visitation." *In re J.C.*, 368 N.C. 89, 89 (2015). She also cites *In re K.M.* to support her contention, where we found the trial court "erred by failing to assign responsibility for the costs of supervised visitation" in a PPO. *In re K.M.*, 277 N.C. App. 592, 605 (2021).

Indeed, the court must assign responsibility for the costs and determine whether that party can afford them, but it need not also make findings about the exact cost of supervision or the precise agency to employ. Here, the court correctly determined what it was required to find: responsibility for the costs was assigned to respondent-mother and the court found her able to afford them. This is supported by evidence throughout the record, including the testimony of both respondent-mother and Kamil's grandmother and respondent-mother's pay stubs.

Furthermore, the cases respondent-mother cites to support her argument that further findings were necessary are not on all fours with the instant case. All her cited cases concerned orders requiring ongoing supervised visitation as part of the primary plan, rather than orders making supervised visitation conditional. *See In re J.C.*, 235 N.C. App. 69, 70–71 (2014), *rev'd in part*, 368 N.C. 89 (2015); *In re Y.I.*, 262 N.C. App. 575, 581 (2018); *In re J.T.S.*, 268 N.C. App. 61, 74 (2019); *In re K.M.*, 277 N.C. App. 592, 595–596 (2021).

Lastly, the court's legal conclusions were also not clearly erroneous. Here, the court concluded that supervision of visits was unnecessary at present, but that further absences would require it, having made relevant findings based on ample

evidence showing that visitation had been erratic and unreliable. In its discretion, the court reached a reasonable conclusion, tailored to the circumstances and based on available facts. In sum, the court correctly determined the extent of necessary findings and included findings sufficient to support its legal conclusions as to visitation. Accordingly, we find no error.

2.        Statutory Requirements to Waive Future Hearings

To waive the holding of future juvenile placement hearings, N.C.G.S. § 7B-906.1(n) requires the court to find "by clear, cogent, and convincing evidence" the following: that the juvenile's placement has been consistent for one year, that it is stable, that continuation is in his best interests, that neither his best interests nor any party's rights require hearings every six months, that all parties are aware that they can motion for the court's review at any time, and that the relative will be the juvenile's permanent custodian or guardian. N.C.G.S. § 7B-906.1(n).

In the court's *conclusions of law*, it wrote:

> The placement is stable and continuation of the placement is in the best interests of the child. Neither the interests of the child or the parents require further reviews. All parties are informed that the matter may be brought before the Court for review at any time by the filing of a motion or on the court's own motion. The Court is establishing [Y.L.] as the permanent guardian of the child.

Respondent-mother concedes that this language "would appear on its surface to satisfy the requirements," but prays that we vacate this portion and remand, alleging that these were not findings of fact and did not recite the standard of review.

"The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review. *Westmoreland v. High Point Healthcare, Inc.*, 218 N.C. App. 76, 79 (2013). The court's "mislabeling of its findings and conclusions will not . . . be fatal to its order . . . . As long as 'each link in the chain of reasoning' appears . . . mislabeling is merely an inconvenience to the courts." *State ex rel. Utils. Comm'n v. Eddleman*, 320 N.C. 344, 352 (1987). This is an inconvenience *de minimus*, and we can acknowledge that the language constitutes findings of fact even though they are arguably misplaced. Thus, their inclusion with the court's legal conclusions does not constitute error.

Respondent-mother is correct that the order does not indicate the applicable standard of review. But this Court has held, in a previous case in which the trial court neglected to state the standard of proof this statute requires, that "failure to do so is not prejudicial error if the record when viewed in its entirety clearly reveals that the court applied the proper evidentiary standard or where the appellant does not challenge those factual findings as lacking evidentiary support." *In re E.M.*, 249 N.C. App. 44, 56 (2016) (quotes omitted). Here, respondent-mother does not allege that the factual findings were without evidentiary support, and unchallenged findings of fact are "presumed to be supported by competent evidence" and are binding on appeal. *Koufman* at 97. Nor can she make such a claim, because the findings are entirely consistent with the court's findings of fact, all of which were reasonable considering the voluminous record before us, including extensive questioning of both Kamil's

grandmother and respondent-mother, medical records, respondent-mother's positive drug screens, and the other findings of fact discussed above. We can find no manifest error in these unchallenged findings. Thus, the argument is without merit.

## III. Conclusion

For the foregoing reasons, we deny respondent-mother's petition for writ of certiorari to review the initial order and affirm the second order.

AFFIRMED.

Chief Judge DILLON and Judge MURRY concur.

Report per Rule 30(e).